IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ESTRELLA A. MARES,**

        **Plaintiff,**

v.                                                         **No. CIV-15-113 WJ/LAM**

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

        **Defendant.**

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 23*) and memorandum brief in support of the motion [*Doc. 24*], both filed July 21, 2015. On October 20, 2015, Defendant filed a response to the motion [*Doc. 27*], and, on October 27, 2015, Plaintiff filed a reply [*Doc. 28*]. United States District Judge William P. Johnson referred the claims raised in the motion to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 17*]. The Court has reviewed the motion, response, reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 16*]. For the reasons set forth below, the Court recommends that *Plaintiff's Motion to Reverse or Remand*

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

*Administrative Agency Decision* (*Doc. 23*) be **GRANTED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

## I.   Procedural History

On May 18, 2012, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB") (*Doc. 16-8* at 10-18), and, on the same day, filed an application for Supplemental Security Income (hereinafter "SSI") (*id.* at 2-9), alleging that she became disabled on March 15, 2012.   Plaintiff stated that she became disabled due to bipolar disorder.   [*Doc. 16-9* at 31].   The applications were denied at the initial level on August 1, 2012 (*Doc. 16-6* at 2-5) and at the reconsideration level on January 11, 2013 (*id.* at 8-10).   Pursuant to Plaintiff's request (*id*. at 21-22), Administrative Law Judge Barry O'Melinn (hereinafter "ALJ") conducted a video hearing on June 19, 2014 (*Doc. 16-4* at 2-36).   At the hearing, Plaintiff was represented by counsel and testified.   *Id.* at 6-32.   Vocational Expert (hereinafter "VE"), Diane Webber, was also present and testified.   *Id.* at 32-35.

On August 29, 2014, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.   [*Doc. 16-3* at 11-31].   On November 6, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 7-10), and, on December 11, 2014, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner.   On February 6, 2015, Plaintiff filed her complaint in this case.   [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of*

*Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 36 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).   In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.   20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."   20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity (hereinafter "RFC"), age, education, and work experience.   *Grogan*, 399 F.3d at 1261.

### IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on March 29, 1984, and was 30 years old at the time of the administrative hearing on June 19, 2014.   [*Doc. 16-4* at 2; *Doc. 24* at 1].   Plaintiff has worked as a gas station clerk, a retail clerk, a motel housekeeper, a waitress, and an in-home care provider. [*Doc. 16-9* at 16].   Plaintiff alleges that she is unable to work because of anxiety, panic attacks,

4

and explosive anger. *Id.* at 55-63. Plaintiff's medical records include: progress reports from Robert Franklin, M.D., for the periods of April 11, 2015 to June 11, 2012 (*Doc. 16-11* at 2-10), August 8, 2012 to August 22, 2012 (*id.* at 15-18), and April 11, 2012 to March 14, 2013 (*id.* at 38-49); a medical source statement of mental limitations from Teresa Bertoncin, LPCC, LMFT for the period of March 20, 2013 to March 25, 2013 (*id.* at 50-56); treatment report from J. Michael Mash, Ph.D. for August 24, 2013 (*Doc. 16-12* at 2-7); medical records from the New Mexico Division of Vocational Rehabilitation for the period of November 23, 2010 to October 11, 2012 (*Doc. 16-13* at 2-57; *Doc. 16-14* at 2-6); treatment report from Janice Chua, LMFT for June 17, 2014 (*Doc. 16-4* at 7-9); and medical records from Tri County Community Services for the period of August 6, 2013 to March 24, 2014 (*Doc. 16*-14 at 10-20). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2012, the alleged onset date. [*Doc. 16-3* at 16]. At step two, the ALJ found that Plaintiff has the following severe impairments: "a bipolar disorder; a panic disorder; and an intermittent explosive disorder." *Id.* At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id* at 17. In so finding, the ALJ found that Plaintiff has mild restriction of her activities of daily living (hereinafter "ADLs"), mild difficulty with social functioning, moderate difficulty with concentration, persistence, and pace, and had had no episodes of decompensation of extended duration. *Id.* at 17-18. The ALJ therefore concluded that Plaintiff had not satisfied the

Paragraph B criteria. *Id.* at 8. The ALJ also found that, as there was no evidence of the Paragraph C criteria, that paragraph was likewise not satisfied. *Id.*

Before step four, the ALJ determined Plaintiff's RFC, concluding that she had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is able to understand, carry out, and remember detailed but not complex instructions and make commensurate work related decisions; [Plaintiff] is able to respond appropriately to supervision, co-workers, and work situations; [Plaintiff] is able to deal with routine changes in the work setting; and [Plaintiff] is able to maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout the workday." *Id.* at 19. In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* at 20.

With respect to intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that Plaintiff had worked 30 hours per week, post-onset, as a server in a restaurant and "stopped working for reasons unrelated to her own alleged disabilities," and that there was "little credible evidence indicating that her condition was materially worsened since she stopped working." *Id.* at 24. The ALJ further found that, although Plaintiff's employment as a caregiver at the time of the hearing was limited to six hours per week, "her limits related to work seem more driven by her family's needs than by any disability." *Id.* The ALJ noted that Plaintiff's "sparse work record and her criminal history are also inhibiting factors [to her employment] unrelated to disability," concluding that it was "very unlikely [Plaintiff] could do work as a restaurant server or a paid care job if her symptoms were as severe as she alleges. [Plaintiff's] lack of work owes

6

more to her need to care for her son, her criminal history and poor prior work record than it does to her mental health condition." *Id*.

Regarding the opinion evidence on this issue, the ALJ gave "little weight" to the opinion of Plaintiff's treating therapist, Teresa Bertoncin, that Plaintiff has had difficulty holding down a job, "as this conclusion is not borne out by the [Plaintiff's] actual post-onset work activity." *Id.* at 20. The ALJ also gave "little weight" to Ms. Bertoncin's evaluation that Plaintiff is "seriously limited" and "unable to meet competitive standards," and that she would miss more than four days per month of work due to her impairments or treatment, concluding that Ms. Bertoncin's "opinions are not consistent with the record as a whole, including the objective clinical findings, [Plaintiff]'s response to treatment, [and] her daily activities, including her post-onset work activity." *Id.* at 22. The ALJ likewise gave "little weight" to the similar opinion of Plaintiff's treating physician, Dr. Mash, that Plaintiff was "seriously limited" and "unable to meet competitive standards" and would be likely to miss more than four days of work per month, stating that Dr. Mash's "opinions are not consistent with the record as a whole, including the objective clinical findings, his own treatment records, and the claimant's daily activities, including her post-onset work activity." *Id*. The ALJ considered the Global Assessment of Functioning (hereinafter "GAF") of 65[2] assigned to Plaintiff by Janice Chua, Plaintiff's treating therapist, finding that the score was "consistent with some mild symptoms or some difficulty with social or occupational functioning[,] but

---

[2] The GAF score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning, and should not include impairment in functioning due to physical or environmental limitations. DSM-IV-TR at 32. A GAF score within the range of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood;" a GAF score within the range of 41-50 indicates "[s]erious symptoms" such as "suicidal ideation, severe obsessional rituals, [or] frequent shoplifting," or "serious impairment in social, occupational, or school functioning (*e.g*., no friends, unable to keep a job);" and a GAF score of 65 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well," with some meaningful interpersonal relationships. *Id.* at 34.

generally functioning pretty well." *Id.* at 20-21.  However, the ALJ did not indicate what weight he gave to Ms. Chua's opinions.  The ALJ also considered an April 11, 2012 office treatment record of Dr. Robert Franklin, stating that Plaintiff's appearance, behavior, and speech were within normal limits, her mood was "okay," and she was able to recall three out of three words.  *Id*. at 20.  Again, however, the ALJ did not indicate what weight he gave to these opinions.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a restaurant server because that work does not require the performance of work-related activities precluded by Plaintiff's RFC.  *Id.* at 24.  In making this finding, the ALJ considered the VE's responses to four hypothetical questions, three of which were negative on the issue of whether the described person would be capable of performing work activity.  The ALJ distinguished or rejected all but one of the VE's answers in determining that Plaintiff was capable of performing her past relevant work and, therefore, was not disabled within the meaning of the Social Security Act.  *Id.* at 24-25.  Based on that determination, the ALJ did not proceed to step five.

## V.   Analysis

Plaintiff contends that the ALJ erred by failing to properly consider the medical opinions of Dr. Mash, Dr. Franklin, Ms. Bertoncin and Ms. Chua.  [*Doc. 24* at 15-21].  Plaintiff asks the Court to reverse her case and render a "fully favorable decision," or, in the alternative, to reverse and remand for a new hearing.  *Id.* at 21.  Defendant disputes Plaintiff's contentions and argues that the ALJ properly considered the medical evidence.  [*Doc. 27* at 5-13].  In her reply brief, Plaintiff added a new claim to the effect that her earnings record indicates that "she could not perform substantial gainful activity."  [*Doc. 28* at 3-4].  However, the Court will not consider a

claim that is first raised in a reply brief because Defendant did not have an opportunity to address it.

### A.   The ALJ's Consideration of the Opinions of Dr. Mash and Dr. Franklin

Plaintiff first contends that the ALJ failed to properly evaluate the opinions of Plaintiff's treating medical sources, Dr. Michael Mash, a psychologist (*Doc. 24* at 12-13) and Dr. Robert Franklin, a physician (*id.* at 15-16). Defendant, however, contends that the ALJ did not err in his consideration of the medical opinions because he properly discussed his reasons for discounting them. [*Doc. 27* at 6-7]. Defendant states that "[a]s the ALJ explained, [Dr. Mash]'s opinion was inconsistent with the objective clinical findings and the doctor's own treatment records." *Id.* Defendant also contends there was no error regarding Dr. Franklin, asserting that (1) "Dr. Franklin did not give any specific opinions about Plaintiff's ability to work" (*id.* at 10), (2) his notes generally supported the ALJ's decision" (*id.*), and (3) his low GAF scores are not controlling, (*id.* at 10-11).

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta*, 500 F.3d at 1077 (citations omitted). If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight." If, however, the treating physician's opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to

9

deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the medical field upon which an opinion is given; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citations and internal quotation marks omitted).

Although the ALJ appears to have considered some of the relevant factors under 20 C.F.R. §§ 404.1527(c), 416.927(c) in concluding that Dr. Mash's opinions are entitled to "little weight," the ALJ actually completely disregarded Dr. Mash's conclusions, such as his diagnoses of Bipolar II Disorder (*see Doc. 16-12* at 3), assignment of a GAF of 45 to Plaintiff (*id.*), and his opinion that Plaintiff's "anxiety coupled with her cognitive rigidity and hypervigilance would render her a time-bomb of emotional reactivity with spikes of panic and/or intense rage" (*id*. at 5), and that he had observed her reaction to moderate stress "multiple times" and "she either cries hysterically or becomes impulsive, agitated and defiant." *Id*. at 6. The ALJ apparently accepted many of Dr. Mash's clinical findings, but concluded that his opinions were not supported by the record as a whole. However, the majority of medical evidence is consistent with Dr. Mash's opinions regarding Plaintiff's ability to function normally. *See, e.g.,* [*Doc. 16-14* at 11-12]

(diagnosis of bipolar disorder, panic disorder without agoraphobia, and intermittent explosive disorder, on March 24, 2014, noting that although Plaintiff reported "improved mood stability," she still had "refractory spikes of intense anxiety, anger when stressed," and increasing the medication for her bipolar disorder); *id*. at 16 (noting long history of "severe mood swings, with explosive anger and high panic," and, despite positive response to medications, "her symptoms remain").

In reaching the RFC determination, the ALJ concluded that Dr. Mash's opinions were entitled to "little weight," without any explanation of which other opinions the ALJ did rely on, or how those opinions fail to support Dr. Mash's opinions. This conclusory statement fails to satisfy the requirement that the ALJ must adequately explain why a treating physician's opinion is not given deference, even when the opinion is found to not be entitled to controlling weight. *See* Soc. Sec. Rep. 96-2p, 1996 WL 374188, at *4 (explaining that "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight"); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (explaining that an ALJ must give good reasons for the weight assigned to a treating physician's opinion so that a subsequent reviewer can clearly analyze the appropriateness of the weight). Since the ALJ's RFC determination does not account for most of the limitations found by Dr. Mash, it appears that the ALJ rejected the majority of Plaintiff's treating physician's opinions, and this was done without any specific explanation of how the treating physician's opinions were inconsistent with the other medical evidence presented in the record, in violation of the requirements regarding the deference that should be given treating physicians' opinions. *See Hamlin*, 365 F.3d at 1219 (finding that the ALJ erred in failing "to sufficiently highlight how the treating physician's evaluations were inconsistent with the other medical evidence presented in the

11

record"); and *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.") (citation and internal quotation marks omitted); *see also Carpenter*, 537 F.3d at 1265 (an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

Defendant also attempts to supply the missing evidence that conflicts with Dr. Mash's opinions (*see Doc. 27* at 6-8); however this is impermissible *post hoc* rationalization. *See Robinson*, 366 F.3d at 1084 (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons for giving less weight to or rejecting the treating physician's opinion" after the fact) (citation omitted). The Court rejects Defendant's statement that the ALJ properly considered Dr. Mash's opinion to be inconsistent with the objective clinical findings and Dr. Mash's own treatment records because Dr. Mash's treatment notes indicated "that Plaintiff had thoughts of suicide, autonomic hyperactivity, and paranoia," and this is inconsistent with his own treatment notes to the effect that her "motor activity was 'intact.'" [*Doc. 27* at 6-7]. Although the ALJ did rely on inconsistency as a reason to give little weight to Dr. Mash's opinions (*i.e.*, that Plaintiff was seriously limited, would be unable to meet competitive standards, and would likely miss more than four days of work per month), the ALJ did not specify any particular findings or notes that he considered to be inconsistent with those opinions. In addition, Dr. Mash's opinions of Plaintiff's ability to have and keep a job were unrelated to her "motor skills."

With respect to Dr. Franklin, who was also Plaintiff's treating physician, the ALJ wholly failed to state what weight was given to his opinions. Failure to assign weight to a treating physician's opinions is legal error because, when there are multiple opinions regarding medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions. *See Hamlin*, 365 F.3d at 1215. Essentially the ALJ's entire discussion of Dr. Franklin's records was to the effect that, on April 11, 2012, Dr. Franklin reported that Plaintiff's "appearance, behavior, and speech were within normal limits. Her mood was 'okay' and she was able to recall three out of three words." [*Doc 16-3* at 20]. The ALJ failed to note that this was but a small portion of the referenced treatment record, which in turn was but one of many treatment notes provided by Dr. Franklin. *See* [*Doc. 16-11* at 38-49]. The ALJ also failed to note that Dr. Franklin, on several occasions, evaluated Plaintiff's GAF at 40, and that the highest rating he gave her between April 11, 2012 and March 14, 2013 was a GAF of 50 on June 11, 2012. *Id.* at 38, 39, 40, 42, 43, and 49. In fact, the ALJ did not meaningfully discuss Dr. Franklin's clinical findings at all, instead simply reducing them to a general statement that Plaintiff functioned within normal limits, without discussing the framework within which that particular finding was made, nor the other findings that appear to conflict with that statement. [*Doc. 16-11* at 8-10]. In any event, Defendant's assertion that Dr. Franklin's notes "generally supported the ALJ's decision" (*Doc. 27* at 10) appears to be a gross overstatement of records that are largely illegible, but which appear generally consistent with the findings of all of Plaintiff's other treating medical sources, to the effect that Plaintiff suffers from bipolar and anxiety disorders that are exacerbated by stress. *See* [*Doc. 16-11* at 39-49].

For the reasons stated above, the Court concludes that the ALJ failed to comply with the legal requirements of *Pisciotta*, 500 F.3d at 1077, and 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2), in considering Plaintiff's treating physicians' opinions.  The Court finds that the ALJ failed to provide "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," because the ALJ failed adequately to discuss why Plaintiff's treating sources' opinions were inconsistent with the evidence in the record.  *See Hamlin*, 365 F.3d at 1215.  Essentially, the ALJ rejected all negative aspects of Plaintiff's treating sources' opinions regarding the severity and effect of her symptoms on her ability to perform work based on the fact that, in 2012, post-onset, Plaintiff had worked as a waitress 30 hours a week for seven months.  That job was also found by the ALJ, in step one of his disability determination, not to have constituted substantial gainful activity ("SGA"), although he did state that it was "evidence of [Plaintiff's] ability to engage in [SGA]."  [*Doc. 16-3* at 16].  Whereas the vast majority of the treatment records indicate that Plaintiff had, and continues to have, significant symptoms of bipolar, panic, and intermittent explosive disorders, the ALJ appeared to rely only on snapshots of Plaintiff at various times when she was described by her treating physicians as "doing well."  On remand, the ALJ should consider these opinions regarding Plaintiff's limitations in compliance with those legal requirements.

**B.   The ALJ's Consideration of the Opinions of Teresa Bertoncin and Janice Chua**

Plaintiff also contends that the ALJ failed to properly evaluate the opinions of Plaintiff's treating therapists, Teresa Bertoncin (*Doc. 24* at 13-15), and Janice Chua (*id.* at 16-18).  A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  *See also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations").  The ALJ must base

14

the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.  Soc. Sec. Rep. 96-8p at *5.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (*e.g*., daily activities, observations)."  *Id.* at *7.  The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions.  *Id.*   Because the ALJ must consider the whole record, he is prohibited from picking and choosing "among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted).  When there are multiple opinions regarding medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions.  *Hamlin*, 365 F.3d at 1215 (citation omitted).

Here, the ALJ referenced Ms. Bertoncin's March 25, 2013 Medical Source Statement (*Doc. 16-11* at 55-56), paying particular attention to her responses that indicated Plaintiff was limited but functional, then noting that "Ms. Bertoncin concluded the [Plaintiff] is 'unable to meet competitive standards' in her abilities to accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; and deal with the stress of semi-skilled and skilled work.   Ms. Bertoncin also anticipated the [Plaintiff] would be absent from work more than four days per month due to her impairments or treatment."  [*Doc. 16-3* at 21-22].   The ALJ

specifically rejected only the opinions that indicated Plaintiff was either "seriously limited" or "unable to meet competitive standards," as well as the opinion that Plaintiff would be absent from work more than four days per month, stating that "her opinions are not consistent with the record as a whole, including the objective clinical findings, the [Plaintiff]'s response to treatment, her daily activities, and her post-onset work activity." *Id*. at 22. This generalized statement is not supported by references to conflicts in "objective clinical findings" or Plaintiff's "response to treatment," but is effectively a "boilerplate" response by the ALJ to all medical source opinions that conflict with his view that Plaintiff's "post-onset work activity," consisting of working as a waitress for 30 hours per week for seven months in 2012, eliminates the possibility that she is disabled. In fact, the ALJ repeatedly refers to this work experience in support of his conclusions that differ from those of the medical sources, almost always noting that Plaintiff "quit" that job "for reasons unrelated to her conditions." *See*, *e.g*., [*Doc. 16-3* at 24 and 25]. What Plaintiff actually testified was that she stopped working at the restaurant "[d]ue to the disability with my son[,] I was back and forth to the UNM Psychiatric Ward *and just dealing with my own anxiety* was too much for me. And when situations like that happen with my son, I couldn't request off because he would have his outbreaks and we would take him to the Holy Cross Hospital and then they would just transport him. I was there at the psychiatric ward and also in Santa Teresa one time so I wasn't able to keep my job due to the situations I was in." [*Doc. 16-4* at 10] (emphasis added). Also, when asked by the ALJ if she had "resigned" from that job, Plaintiff responded "[y]es. My boss just told me she couldn't work with me anymore because I wasn't capable of keeping the job." *Id*. at 11. Plaintiff also testified that she had lost jobs because she sometimes called in sick to work because she just could not get herself up to go to work, (*id*. at 24-25), and reported that she had lost two jobs because of her anger issues. [*Doc. 16-9* at 62]. Accordingly,

it is the ALJ's opinion that barely getting by in a waitress job for seven months, more than a year before the medical sources rendered their opinions, was better evidence of Plaintiff's RFC than were those medical opinions.

The ALJ's failure to explain why he chose to rely on some findings by Ms. Bertoncin and not on others is legal error. *See* Soc. Sec. Rep. 96-8p at *7 (The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"); *see also Carpenter*, 537 F.3d at 1265 (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). Moreover, despite Defendant's statement that her attempt to supply the ALJ's reasoning for his findings (*see Doc. 27* at 11) is not an impermissible *post hoc* rationalization, the Court disagrees. *See Robinson*, 366 F.3d at 1084 (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).

With respect to Ms. Chua, the ALJ did not state what, if any, weight he gave her opinions. As already noted, this is legal error. The ALJ did note the GAF score of 65 that Ms. Chua had assigned to Plaintiff (*Doc. 16-14* at 9), noting that this score was "consistent with some mild symptoms or some difficulty with social or occupational functioning but generally functioning pretty well." [*Doc. 16-3* at 20-21]. However, the ALJ did not discuss how a GAF score of 65 was either consistent or inconsistent with Ms. Chua's other statements that Plaintiff "presented with significant anxiety symptoms," that she described as "sudden surges of intense fear with rapid heart rate, shortness of breath, chest pains, trembling, sweating, and fear of losing control," that occurred several times a day and led to binge eating and sleep problems. [*Doc 16-14* at 8-9].

17

This opinion appears to be at least somewhat supportive of both Dr. Mash's and Ms. Bertoncin's opinions regarding the difficulties Plaintiff continued to have with stress.

For these reasons, the Court finds that the ALJ failed to properly consider the opinions of Ms. Bertoncin and Ms. Chua. On remand, the ALJ should consider these opinions regarding Plaintiff's limitations in compliance with the applicable legal requirements.

## VI.   Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 23)* be **GRANTED** as set forth above, and the decision of the Commissioner be **REMANDED** for further proceedings consistent with this opinion.

*Lourdes a. Martínez*
_____
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**